[File No. 7011]

STATE OF NORTH DAKOTA EX REL. P. W. LANIER, JR., Plaintiff, v. THOMAS HALL, as Secretary of State of the State of North Dakota, and MAE CLASSON, as County Auditor of the County of Cass and State of North Dakota, Respondents.

(23 NW2d 44)

Opinion filed May 6, 1946

P. W. Lanier, Jr., pro se, and *Francis Murphy*, for plaintiff.
Nels G. Johnson, Attorney General, and *P. O. Sathre*, Assistant Attorney General, for respondents.

MORRIS, J.  The relator presented an affidavit and petition in which he sought to invoke the original jurisdiction of this court and to have us issue an alternative writ of mandamus to compel the Secretary of State and the County Auditor of Cass County to print and deliver to qualified electors absent voters ballots containing the names of candidates for election to the office of United States Senator to fill the vacancy created by the death of the late Honorable John Moses.  The petition was accompanied by a refusal of the Attorney General to bring the action in the name of the State of North Dakota.  We issued an order to show cause why a peremptory writ of mandamus should not issue returnable on April 29, 1946.  On the return date the Attorney General of the State of North Dakota, representing the respondents, appeared and moved to quash the petition and the matter was heard on the issues thus framed.

On January 12, 1946, the Governor of North Dakota issued a writ of election directed to the Secretary of State which recited the circumstances creating a vacancy in the office of the United States Senator from the State of North Dakota, for the term ending in January, 1951, and further stated:

"Now, therefore, you are hereby notified that I, Fred G. Aandahl, Governor of the State of North Dakota, by virtue of the authority and power vested in me by the Constitution and the laws of the State of North Dakota, and under and pursuant to the provision of § 16–0707 of the North Dakota Revised Code of 1943, do hereby issue this Writ of Election to fill the vacancy in the office of United States Senator from the State of North Dakota, such election to be held on the 25th day of June, 1946, and you, as Secretary of State, are hereby directed and required

to notify the several county auditors of the State of North Dakota, to give notice as required by law in such cases to their respective election boards and to the electors in their counties within the time and in the manner provided by law.

Let the public and all of the election boards in the State of North Dakota take due notice of this Writ of Election, and comply with its provisions.

Notice is further given that all certificates of nomination of candidates for said special election shall be filed with the Secretary of State of the State of North Dakota not less than twenty-five (25) days before the day of said election, and not later than 5 p.m. on the twenty-fifth (25th) day before such special election."

The object of this proceeding is to compel the respondents to prepare and distribute absent voters ballots affording to absent voters the opportunity to express their choice of candidates seeking election to fill the vacancy. We first direct our attention to the absent voters statute in order to ascertain to what elections it applies. The latest legislative expression is found in Ch 16, Sess Laws ND 1944, enacted at the Extraordinary Session of the Twenty-Eighth Legislative Assembly wherein it is provided:

"Any qualified elector of this state, who is absent from the county in which he is an elector, or who by reason of physical disability, or who is in the Military or Naval service or the Merchant Marines of the United States of America, and, is unable to attend at the polling place in his precinct to vote at any general or primary election, may vote an absent voters ballot at any such election as hereinafter provided."

The absent voters law of this State was originally enacted as Ch 155, Sess Laws ND 1913, the title of which stated it to be "AN ACT to Provide a Method of Voting at Any General or Primary Election by Electors Absent or Anticipating Being Absent on the Day of Such Election from the County in Which They Are Electors." It was subsequently amended by Ch 6, Laws of 1918, Special Session; Ch 202, Sess Laws 1923; Ch 136, Sess Laws 1931; Ch 107, Sess Laws 1933; Ch 148, Sess Laws

1941; and Ch 16, Sess Laws 1944, Special Session, from which we have quoted above. None of these amendments attempt to extend or amplify the original title or the scope of the act to include any elections other than general or primary. It is interesting to note, however, that at the Special Session of 1919 the legislature by Chapter 32 of the Session Laws of that year, among other things, extended the law to include the right to vote by absent voters ballot at special elections. That act was referred to a vote of the people and disapproved by them on June 30, 1920 (see p 252, Sess Laws 1921).

It is clear from the language and the history of our absent voters statutes that absent voters ballots can only be used at general and primary elections.

Article 17 of the Amendments to the Constitution of the United States provides that, "When vacancies happen in the representation of any state in the Senate, the executive authority of such state shall issue writs of election to fill such vacancies: Provided, that the legislature of any state may empower the executive thereof to make temporary appointment until the people fill the vacancies by election as the legislature may direct."

The legislature of this state in accordance with this provision of the Federal Constitution has made the following provision: "If a vacancy occurs in the office of United States senator from this state, the governor shall issue a writ of election to fill such vacancy at the next state-wide election. The governor, by appointment, may fill such vacancy temporarily, and the person so appointed shall serve only until the vacancy is filled at the next state-wide election." Section 16–0707, Rev Code 1943.

The relator contends that the election so provided is general in its nature because the time is fixed by law and not by official discretion; the places for holding the election are fixed by law and involve every voting precinct and the election of the officials are for the same offices as those being voted upon at a general or primary election.

A determination of the nature of the election for filling a vacancy in the office of United States Senator requires a consideration of the whole system set up by the people for choosing

their elective officials. It cannot be determined by giving to one statute a narrow and compelling construction which does not fit in with the entire elective structure.

Basically there are three types of elections in this state dealing with the choice of elective public officials. They are denominated by statute as general, primary and special. The general election is held on the first Tuesday after the first Monday in November of each even-numbered year. Section 16-0601, Rev Code 1943.

Section 16-0401, Rev Code 1943, provides that: "On the last Tuesday in June of every year in which a general election occurs, there shall be held in the various voting precincts of this state, in lieu of party caucuses and conventions, a primary election for the nomination of candidates for the following offices to be voted for at the ensuing general election: representatives in Congress, state officers, county officers, district assessors, and the following officers on the years of their regular election: judges of the supreme court and district court, members of the legislative assembly, county commissioners, and United States senators. For special elections for the officers enumerated in this section, the nominations shall be made as provided in this title." ("this title" is title 16 Revised Code of which Ch 16-07 is a part).

Insofar as the primary election deals with the selection of public officers it is a nominating election only at which the people choose candidates for party and no-party offices. The final choice of officers is left entirely to the general election. At the primary no one is elected. The election procedure relative to notice, form of ballot, canvass of votes, and certification of the result deal with nominations and not final election to office. It fixes the time for filling the vacancy in the office of United States Senator because it is a state-wide election and thus falls within the designation of § 16-0707. Walton v. Olson, 40 ND 571, 170 NW 107. This does not mean, however, that the filling of the vacancy is actually a part of the primary election if the primary procedure is not adaptable to the existing circumstances. Ch 16-07, Rev Code 1943, deals with special elections. Section 16-

0702 provides that: "If a special election is called to fill a vacancy in any office for which a party nomination may be made, the proper party committee shall call a convention to make a party nomination for such office. The precinct committeemen of the county or district shall be duly convened and shall elect the required number of delegates to such convention."

The United States Senate is an office for which a party nomination may be made. Other sections of the same chapter provide for notice of holding the convention, the basis of representation, and the certification of nominations made by the convention.

Comparing the primary election with a special election as applied to the filling of a vacancy in the office of United States Senator we find that in the case of the primary there is no applicable procedure for determining who should be candidates or how they should be chosen. On the other hand, under the law pertaining to special elections we find definite provision for making and certifying nominations. Further comparing the statutes we find that petitions for nomination at the primary election must be filed no later than the seventieth day prior to the election. Ch 21, Sess Laws, Special Session, 1944. In the case of nominations for special elections called to fill vacancies caused by death, resignation or otherwise, certificates of nomination must be filed not less than twenty-five days before the election. Ch 20, Sess Laws, Special Session, 1944. Ch 20 further provides that in case of a special election called to fill a vacancy the Secretary of State shall certify to the county auditor the names of candidates not less than twenty days before the election, while the certification of candidates to be voted on at a primary election must be made sixty-five days before that election under the provisions of Ch 24, Sess Laws, Special Session, 1944. Chapter 18, Sess Laws, Special Session, 1944 requires the printing of absent voters ballots at least sixty days before the holding of the primary election.

A further marked difference in procedure between primary and special elections appears in connection with the publication of notice. Under § 16-0413, Rev Code 1943, the county auditor

is required to publish a notice of a primary election once each week for at least two consecutive weeks prior thereto. Section 16–0701 provides that, "A notice of a special election shall be in substantially the form prescribed by § 16–0602 and shall be published or posted as therein prescribed for at least eight days previous to the date of holding such special election." It may be noted that § 16–0602 thus referred to is the section providing for the form of notice required to be published with respect to the general election.

Referring now to the absent voters law we find that under Ch 17, Sess Laws, Special Session, 1944, the county auditor must mail out to electors serving in the Armed Forces or Merchant Marine sixty days before the primary election absent voters ballots as prescribed by that chapter. These ballots, obviously, cannot include the names of candidates to be voted on at a special election since those candidates may file their certificates of nomination up to 5 P. M. on the twenty-fifth day preceding the special election (Ch 20, Sess Laws, Special Session, 1944).

It is argued that while it may be proper to use the procedure provided by special election statutes for nominating candidates for a vacancy in the office of the United States Senate that the election at which the vacancy is filled is properly a part of the primary election and is subject to the procedural requirements thereof, including the printing and distribution of absent voters ballots and may not be considered a special election. Such a theory brands the election in question a hybrid, borrowing part of its procedure from the special election statutes and part from the primary election law. Such a proposition is untenable. Each method of election embraces the procedure designed to effectuate its purpose. The primary being a nominating election is not convertible in whole or in part by judicial construction into a final election to fill a vacancy.

When an elective office becomes vacant it is the policy of the law to give the people a chance to fill it by the elective process as soon as practicable. 42 Am Jur 975, Public Officers, § 130. Under the special election statutes, certificates of nomination may be filed as late as the twenty-fifth day preceding the elec-

tion, while nominating petitions at the primary election must be filed seventy days prior to the election. If the deadline prescribed for the primary is effective, vacancies occurring within forty-five days thereafter and which might be filled at a special election held coincidental with the primary cannot be filled until the next state-wide election occurring after the primary. In People v. Porter, 6 Cal 26, the court held that an election which was ordered by a board of supervisors to fill a vacancy in the office of county judge occasioned by the resignation of the incumbent without the proclamation of the Governor was invalid. The law provided that vacancies in certain offices should be filled by election "at the next general election after the vacancy occurs." It also required that the Governor make a proclamation thirty days prior to the general election, designating the offices to be filled at such election. In holding that the omission of the proclamation with reference to the filling of the vacancy was fatal to the validity of the election the court said, "An election to fill a vacancy occasioned by the death or resignation of an officer is a special election, and the provisions of our laws which require such elections to be held at the same time and place with general elections, does not change their character." In State ex rel. Rowe v. Kehoe, 49 Mont 582, 144 P 162, it was said that a special election is one held to supply a vacancy in public office. In State ex rel. Fish v. Howell, 59 Wash 492, 110 P 386, 50 LRA(NS) 336, it is said that: "The Constitution designedly omits the usual provision 'next election,' or its equivalent, and likewise fails to provide for special elections to fill vacancies; but if the construction contended for by the relator be adopted, there would be in effect a special election in so far as the office of secretary of state is concerned. The fact that the voting occurred at a general election would not deprive it of that character. It is not necessarily the time or manner of holding an election to fill a vacancy that makes it a special election, but the fact that it is held at a time other than the time fixed by law to elect an officer for the regular or defined term." See also State

ex rel. Sampson v. Superior Ct, 71 Wash 484, 128 P 1054, Ann Cas 1914C 591.

In People ex rel. Anderson v. Czarnecki, 312 Ill 271, 143 NE 840, the Supreme Court of Illinois in holding that an election called to fill a vacancy was a special election although held on the same day as a general election said: "Appellant's argument is based upon the contention that under the facts shown in this record the statute fixed the time of holding the election to fill this vacancy at the 'next succeeding general election' after the vacancy occurred, and that such an election is not a special election. There is no basis for this position. Every election called to fill a vacancy is a special election, and the fact that it is held on the same day as the general election does not change its character."

Authorities generally support the proposition that a special election is one provided by law under special circumstances, such as an election to fill a vacancy in office, and that an election to fill a vacancy is a special election although held on the same day as a general election. 29 CJS., Elections, § 1c. While definitions promulgated by the courts are not uniform and are particularly divergent with respect to elections involving the submission to the electorate of propositions or measures (see State ex rel. McCue v. Blaisdell, 18 ND 31, 119 NW 360; Dysart v. St. Louis, 321 Mo 514, 11 SW2d 1045, 62 ALR 762), we have found no authority which would justify the inclusion in a primary election of the filling of a vacancy in an elective office. Where, as in this case, the vacancy is to be filled pursuant to a writ of election issued by the Governor and the only available procedure for determining who are candidates and are entitled to have their names printed on the ballot, is that prescribed by the laws pertaining to special elections, the filling of such vacancy is by special election and the absent voters statutes do not apply thereto.

The motion to quash the application is granted.

CHRISTIANSON, Ch. J., and BURKE, NUESSLE and BURR, JJ., concur.