Dear Ms. Beck:
You have requested our opinion concerning implementation of a provision in the Baltimore City Charter for filling vacancies on the Baltimore City Council by election. Our opinion is that without enactment of a constitutional amendment or a State statute that addresses the issue, the charter provision cannot be given effect.
 I Charter Provision and Its Potential Application
The matter of filling vacancies in the Baltimore City Council is addressed in the new Baltimore City Charter, which was approved by the City's voters at the 1994 general election and went into effect on July 1, 1996. Article III, § 6 of the Charter provides as follows:
 Each vacancy in the City Council shall be filled without delay from the council district in which the vacancy occurs by:
 (a) after public notice, the election as an acting council member by the City Council by a majority vote of its members of a person possessing the qualifications prescribed in Section 1; and
 (b) the election by the voters at the primary and general elections next regularly scheduled after the vacancy occurs of a person possessing the qualifications prescribed in Section 1 to serve the remainder of the unexpired term of the former incumbent.
An opinion issued by your office on September 26, 1996, concluded that a vacancy occurring on June 11, 1996, would be filled on an interim basis by the City Council. The opinion also concluded that the elections to fill the remainder of the term would take place at the time of the statewide primary and general elections in 1998. Accordingly, you have asked about the appropriate procedure to include councilmanic candidates for this vacancy on the ballot during the forthcoming State election cycle. Before this question can be addressed, however, a predicate issue must be considered: whether the City is authorized under current law to provide in its charter for filling vacancies on the City Council by election of the voters.
 II Authority to Fill Vacancies by Election
In Prince George's County v. Board of Supervisors ofElections, 337 Md. 496, 654 A.2d 1303 (1994), the Court of Appeals considered whether a charter home rule county could provide in its charter for filling council vacancies by special election. The Court recognized that, under Article XI-A of the Maryland Constitution, a special election could be held to fill the initial
membership of a county council upon the adoption of a charter. The Court concluded, however, that Article XI-A did not grant the charter counties "the authority to fill later vacancies on their council by election." 337 Md. at 506. Moreover, the Court held, the Express Powers Act, Article 25A of the Maryland Code, granted no authority to the charter counties to hold special elections to fill council vacancies. 337 Md. at 506-7.
In response to this decision, the General Assembly enacted an amendment to Article XI-A, § 3, approved by the voters in 1996, to provide that a county council could enact a local law "as expressly authorized by statute, to provide for the filling of a vacancy in the County Council by special election." The Quadrennial Elections Article, Article XVII, § 2, also was amended.
The 1996 amendments explicitly refer only to "County Councils." In a statement on the proposed constitutional amendment, Senate Bill 524 (Chapter 81 of the Laws of Maryland 1996) and companion legislation, Senate Bill 666 (Chapter 674 of the Laws of Maryland 1996), Senator Green, the sponsor, referred only to the charter counties, which he named. He made no mention of Baltimore City. See Statement of February 22, 1996 of Senator Leo Green before the Senate Environmental and Economic Matters Committee. Although a bill analysis of Senate Bill 524 notes that, for most purposes, Baltimore City is also subject to the same provisions of the Constitution as a charter county, the committee's floor report refers only to authorizing a "chartercounty to provide for filling a vacant county council seat" by special election. (Emphasis added.) Moreover, the companion legislation, Senate Bill 666, amends only the Express Powers Act for the counties, Article 25A, § 5, and not Article II of the City Charter, which contains the express powers of Baltimore City.[1]
The power to adopt and amend a charter is derived from the Constitution itself. Ritchmount Partnership v. Board ofSupervisors of Elections, 283 Md. 48, 58-9, 388 A.2d 523 (1978). There is no basis for the conclusion that the City has any greater power than a county under Article XI-A to provide in its charter for filling a council vacancy by an election. Moreover, no provision in the grant of express powers to the City, Article II of the City Charter, could be interpreted as authorizing the City to conduct such elections. Therefore, because the Court of Appeals has said that Article XI-A does not confer the power to provide in a county charter for an election to fill a council vacancy; because this limitation is true of the City's power as well; and because the amendment to Article XI-A authorizing special elections to fill council vacancies applies only to the charter counties, it follows that the City Charter provision for an election to fill a City Council vacancy cannot be given effect.
The opinion of your office correctly observed that the "City does not possess the legal authority to fill interim vacancies on the City Council by special election," citing the Prince George'sCounty case. The suggestion seems to be that so long as the election to fill a council vacancy is conducted at a regular election, as provided in the charter, it would not be a "special election." However, the Prince George's County case specifically states that after the initial election to fill the membership of the council, there is no authority "to fill later vacancies . . . by election," which evidently means any election. 337 Md. at 506. Moreover, even if only a "special election" is not authorized, the fact that an election is held at the same time as a regular election does not mean that it is not a special election. See,e.g., State ex rel. Lanier v. Hall, 23 N.W.2d 44, 49 (N.D. 1946). One of the indicia of a special election is that it is used to fill an unexpired term. See Article 33, § 22-1(b). See generallyCohen v. Governor of Maryland, 255 Md. 5, 17-18, 255 A.2d 320
(1969). That is clearly the purpose of the election provided for by the Charter.
 III Effectuating the Charter Provision
One certain way to give effect to the Charter provision would be to expressly sanction it in an amendment to Article XI-A of the Constitution.[2] More uncertainly, the Charter provision might also be given effect by a State statute, including a State statute authorizing enactment of an ordinance providing for an election to fill City Council vacancies. The Prince George'sCounty case refers to the absence of an authorization in the Express Powers Act. 337 Md. at 506-7. The implication is that this Act, or the comparable law for the City, could be amended to authorize such elections. Because this is the closest case on point, and because legislative enactments are presumed to be constitutional, we would approve legislation of this kind on bill review.[3]
Once an election to fill City Council vacancies has been properly authorized, we recommend that Article 33, the Election Code, be amended to explicitly authorize the Board of Supervisors of Elections for Baltimore City to conduct the election. SeePrince George's County, 337 Md. at 508-9. We recognize that, for purposes of the Maryland Code, the word "county" ordinarily includes "Baltimore City." Article 1, § 14. In addition, elections in Baltimore City are generally covered by the Election Code. Article 33, § 1-1(a)(6). Nevertheless, the specific provision of the Election Code addressing this matter, Article 33, § 2-9(h), provides that "[i]f acounty charter authorizes the conduct of a special election to fill a vacancy in the county council," the local election. The references to "a county charter" and "the county council" suggest that this provision applies only to the counties, not Baltimore City, especially because the law that enacted § 2-9(h) was contingent on a constitutional amendment that itself applies only to the counties. See Section 2 of Chapter 674.[4]
To ensure certainty about the City election board's legal authority, this provision should be expanded to cover councilmanic special elections in the City.
 IV Conclusion
In summary, it is our opinion that the provision in the Baltimore City Charter for filling City Council vacancies by election cannot be given effect at this time. It may be given effect if sanctioned by a constitutional amendment or a State statute.
Very truly yours,
 J. Joseph Curran, Jr. Attorney General
 Richard E. Israel Assistant Attorney General
_____________________ Jack Schwartz Chief Counsel Opinions Advice
[1] Although Baltimore City has adopted a charter under Article XI-A, there are certain differences between the counties that have adopted a charter under Article XI-A and Baltimore City.See generally Cheeks v. Cedlair Corp., 287 Md. 585, 599,415 A.2d 255 (1980). The article itself distinguishes between the counties and the City and between county councils and the City Council.See Article XI-A, §§ 2 and 3. In particular, § 2 directs the General Assembly to enact a law providing for a grant of express powers to the counties. This grant of legislative powers is contained in the Express Powers Act, codified as Article 25A, § 5. A separate enactment, however, codified in Article II of the City Charter, grants legislative powers to Baltimore City. Cheeks,287 Md. at 600 n. 2 and 607. Moreover, the authority to alter certain provisions of Article XI of the Constitution, which was previously vested in the General Assembly, is vested in the voters and can be exercised through amending the charter. See Article XI, § 9 and Article XI-A, § 6. See also Cheeks, 287 Md. at 600, 604, and 609.
[2] As it has been understood that the Quadrennial Election Article does not apply to the election of the Mayor and Council of Baltimore, it would have not have to be amended.
[3] We must point out, however, that in the Ritchmount
case, the Court declined to rule on the effect of a State statute, Article 25, § 8, authorizing the reservation of the right of referendum in a charter. 283 Md. at 54 n. 5. Moreover, that case emphasized that the power to amend a charter is derived from the Constitution itself, Ritchmount 283 Md. at 58-9, which could be taken to mean that only the Constitution could sanction the charter provision for filling council vacancies by election. Therefore, the legislative approach discussed in the text is by no means free from doubt.
[4] Aside from the interpretive issue concerning the application of § 2-9(h), this office has noted an inconsistency between the constitutional amendment, which refers to an authorizing State statute and local law, and the implementing legislation, which refers to a charter authorization. See Letter of May 15, 1996 from Attorney General Curran to Governor Glendening concerning Senate Bill 666.
 *Page 33